IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAMEINE AUSTIN,<br>     Plaintiff,<br><br> vs.<br><br>COUNTY OF BUTLER<br>PENNSYLVANIA; BUTLER COUNTY<br>PRISON; PRISON BOARD OF<br>BUTLER COUNTY; RICHARD<br>GIGLIOTTI, individually and in his<br>Capacity as Warden of the Butler County<br>Prison; OFFICER McCANDLESS;<br>JOHN AND JANE DOE, CORRECTIONS<br>OFFICERS, Individually and in their<br>Capacity as Employees of the Butler<br>County Prison,<br>     Defendants. | Civil Action No. 12-534<br>Magistrate Judge Maureen P. Kelly<br><br>Re: ECF No. 10 |

## OPINION AND ORDER

**KELLY, Magistrate Judge**

Plaintiff Dameine Austin ("Plaintiff" or "Austin") has filed a Complaint pursuant to 42 U.S.C. § 1983, alleging the violation of his rights under the Eighth and Fourteenth Amendments to the United States Constitution. Plaintiff's claims arise out of Defendants' alleged failure to protect him from an inmate assault, which occurred during his incarceration at the Butler County Prison. Defendants have filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), contending that: (1) Plaintiff cannot maintain a cause of action against the Butler County Prison because it is not an entity amenable to suit; (2) Plaintiff fails to allege a cognizable claim arising out of his incarceration as a non-violent county inmate being held in a housing unit with

1

convicted state inmates; (3) Plaintiff has insufficiently pled facts establishing the requisite deliberate indifference to sustain an Eighth Amendment claim; and, (4) based upon the facts alleged in the Complaint, Plaintiff is not entitled to punitive damages. [ECF No. 10].

For the following reasons, the Motion to Dismiss [ECF No. 10] is granted in part and denied in part.

I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff's Complaint alleges that he was held in contempt of court and incarcerated as a county inmate pursuant to an order of the Court of Common Pleas of Butler County, Pennsylvania. Plaintiff was housed with inmates designated as "State Correctional Inmates" in the Butler County Prison G-pod. [ECF No. 1, ¶¶ 11, 13]. On April 27, 2010, Plaintiff alleges he was harassed by two state inmates, and struck in the face. He immediately reported the assault to Defendant Officer McCandless, who insisted that Plaintiff return to his cell. The two inmates who assaulted Plaintiff were waiting in his cell and proceeded to beat him for 46 seconds. Plaintiff alleges he sustained substantial injuries of the head and neck. He was seen by a nurse at the Butler County Prison, who stated her belief that Plaintiff may have sustained a skull fracture. Instead of promptly directing transport of Plaintiff to the hospital, the nurse provided Plaintiff with an ice-pack and two Motrin pills, the cost of which was deducted from his commissary account. Plaintiff was then returned to his cell. Plaintiff was transferred to another cell the following day, at his request. Plaintiff alleges that he was disciplined for initially refusing to return to his cell after the first assault. Plaintiff also alleges that he was not examined by a doctor until three days after the beating.

As a result of the assault and failure to provide adequate medical treatment, Plaintiff has suffered frequent migraines, dizziness, blurred vision and psychiatric trauma. He has been diagnosed with post-concussion syndrome. He has also suffered extreme pain, fear and humiliation.

Plaintiff alleges that the assault and resulting injuries occurred as a result of Defendants' deliberate indifference to his welfare in requiring him to return to the same cell after he reported being struck in the face. In addition, Plaintiff alleges that Defendants acted with deliberate indifference to his medical needs by failing to obtain immediate and adequate medical care after the assault.

## II. STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 12(b)(6), when deciding a motion to dismiss, the court must read the complaint in the light most favorable to the non-moving party and all well-pleaded, material allegations in the complaint must be taken as true. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. See In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397–98 (3d Cir. 2000).

The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In Twombly, the Supreme Court held that it would not

require a "heightened fact pleading of specifics," but only "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In 2009, the United States Supreme Court revisited the requirements for surviving a 12(b)(6) motion to dismiss in Ashcroft v. Iqbal, 556 U.S. 662 (2009). In Iqbal, the Supreme Court made clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements [are] not suffic[ient]" to defeat a Rule 12(b)(6) motion to dismiss." Id. at 678.  Only "a complaint that states a plausible claim for relief [will] survive[ ] a motion to dismiss." Id. at 679.  In Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009), the United States Court of Appeals for the Third Circuit provided a two-part test to determine whether a claim survives a motion to dismiss. "First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'  The plaintiff must show 'the allegations of his or her complaints are plausible. Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief.' [This] 'plausibility' determination will be 'a context – specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 556 U.S. at 679.

4

## III. DISCUSSION

### A. Butler County Prison

Defendants correctly contend that the Butler County Prison cannot be named as a Defendant in this action because it is not a "person" under Section 1983. Section 1983 provides in relevant part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255–56 (3d Cir.1994).

The claims asserted against the Butler County Prison are subject to dismissal because prison facilities are not "persons" for the purpose of § 1983 liability. See Mitchell v. Chester County Farms Prison, 426 F. Supp. 271 (E.D. Pa. 1976). Accordingly, the Motion to Dismiss claims against the Butler County Prison is granted. See, also, Ruff v. Health Care Adm'r, 441 F. App'x 843, 845 (3d Cir. 2011).

### B. Claims arising out of custodial status of inmates

Plaintiff's Complaint alleges, in part, Defendants' deliberate indifference to his safety resulting from placing him, a non-violent county prisoner, with state correctional inmates. [ECF No. 1, ¶ 22]. Defendants, citing Hunter v. Shouppe, 2007 WL 712207 (W.D. Pa. Jan. 25, 2007),

seek the dismissal of this claim, contending that there is no constitutional right to be housed separately from state correctional inmates.

In Hunter, the United States District Court for the Western District of Pennsylvania recommended the dismissal of plaintiff's Complaint for failure to state a claim upon which relief could be granted. Plaintiff, a pre-trial detainee, asserted that his constitutional rights were violated with regard to his "conditions of confinement," and challenged his housing placement with convicted federal inmates. The Court noted that plaintiff's constitutional rights "are not implicated by his routine housing assignment unless the conditions of his confinement create an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at *3, quoting Sandin v. Conner, 515 U.S. 472, 484 (1995).

> Simply put, housing inmates with differing postincarceration prospects in the same facility does not expose inmates to atypical and significant hardships. Plaintiff's claim that mixing these groups of inmates increases the risk for extortion does not create a claim of constitutional stature; it does not demonstrate that his housing conditions subject him to anything beyond the ordinary incidents of prison life. Indeed, any large group of inmates-even groups comprised solely of parole-eligible inmates-likely includes persons who, for a variety of reasons wholly unrelated to their parole eligibility, will threaten other inmates or extort money from them. Simply put, fights, altercations, threats, and extortion between and among inmates, are not extraordinary or atypical incidents of prison life. When they occur, they should be promptly and appropriately addressed and remedied through the prison's grievance and disciplinary processes. Thus, plaintiff's due process claim fails as a matter of law because housing him with parole-ineligible inmates is not a condition of confinement that creates an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. Campbell v. Johnson, 2006 WL 3692613, *2 (E.D. Va. December 11, 2006) (footnotes omitted).

Hunter v. Shouppe, C.A. No. 07-74, 2007 WL 712207 (W.D. Pa. Jan. 25, 2007*), report and recommendation adopted sub nom*., Hunter v. Schouppe, C.A. No. 07-74, 2007 WL 735487 (W.D. Pa. Mar. 7, 2007).[1]

Accordingly, because housing inmates together who have been convicted by different jurisdictions does not give rise to an "atypical and significant hardship" in relation to the ordinary incidents of prison life, Plaintiff's claim regarding his housing placement with state correctional inmates is dismissed.

### C. Plaintiff's claims against Defendant McCandless

Plaintiff alleges an Eighth Amendment claim arising out of Defendant McCandless's deliberate indifference to Plaintiff's safety when, after learning of the initial assault, McCandless ordered Plaintiff to return to his cell without first ensuring that Plaintiff's assailants were not present. Plaintiff alleges that this callous indifference subjected him to a second attack by the same inmate(s) who had just assaulted him. Defendants seek the dismissal of the claims against McCandless, asserting that the Complaint does not allege facts sufficient to establish the requisite degree of deliberate indifference to support a claim for the violation of Plaintiff's constitutional rights. However, at this stage of the action, Plaintiff has alleged sufficient facts to survive a Motion to Dismiss based upon the obvious risk of harm presented by Plaintiff's report of the initial attack.

Recently, the United States Court of Appeals for the Third Circuit summarized the law applicable to failure to protect claims arising out of inmate attacks:

---

[1] Plaintiff apparently concedes the propriety of dismissing his claim predicated upon housing a convicted county inmate with convicted state inmates inasmuch as Plaintiff has not responded to Defendants' Motion to Dismiss this particular claim nor has he indicated his opposition thereto.

> Still, not 'every injury suffered by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety.' To state a claim for damages against a prison official for failure to protect from inmate violence, an inmate must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm.
>
> 'Deliberate indifference' in this context is a subjective standard: 'the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.' It is not sufficient that the official should have known of the risk. A plaintiff can, however, prove an official's actual knowledge of a substantial risk to his safety 'in the usual ways, including inference from circumstantial evidence.' In other words, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'

Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2012)(internal citations omitted). The Court of Appeals concluded that in the case before it, the plaintiff sufficiently pled a failure to protect claim against several prison defendants. The complaint alleged that defendants placed plaintiff in a locked recreation area with violent inmates who knew of his cooperation with prison officials as an informant, and further alleged that the plaintiff had previously advised defendants of multiple threats received by his attacker for his role as an informant. Id. at 369. Acknowledging the "arduous task" confronting prison officials to determine the veracity of perceived threats of harm, the Court of Appeals noted that where the facts alleged give rise to an obvious risk of harm, the failure to protect the inmate may give rise to a constitutional violation.

In this case, Plaintiff alleges that after being struck in the face by one of his assailants, he immediately advised Defendant McCandless of the attack. Defendant McCandless is alleged to have ignored the risk of ordering Plaintiff to return to his cell without first ensuring that his assailants were not present. As a result of this conduct, Plaintiff alleges that he was subjected to a substantial and obvious risk of further injury. These allegations are sufficient to state a claim

8

against Defendant McCandless. Therefore, Defendants' Motion to Dismiss Plaintiff's claims against Defendant McCandless is denied.

### D. Claims Against Supervisory Defendants

Defendants seek the dismissal of the claims against the County of Butler, the Prison Board of Butler County, and Richard Gigliotto, individually and in his capacity as Warden of the Butler County Prison (collectively referred to as the "Supervisory Defendants"). They contend that Plaintiff's Complaint does not allege sufficient personal involvement of each of these parties to support a viable Section 1983 claim.

#### 1. Policy or Custom

With regard to the County of Butler and the Prison Board of Butler County, Section 1983 claims against a municipal entity are significantly different than those against individual officials. The United States Supreme Court has held that municipalities and other local government units qualify as "persons" subject to liability under Section 1983. Monell v. Dept. of Soc. Servs., 436 U.S. 658, 690 (1978). However, a municipality cannot incur Section 1983 liability based on a theory of respondeat superior. Id. at 691. Rather, Section 1983 imposes liability "'if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation.'" See Connick v. Thompson, ___ U.S. ___, 131 S. Ct. 1350, 1359 (2011)(quoting, Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 692, (1978). "[U]nder Section 1983, local governments are responsible only for 'their own illegal acts.'" Id., quoting, Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986). Thus, Plaintiffs who seek to impose liability on local governments under Section 1983 must prove that "action pursuant to official municipal policy" caused their injury. Monell, 436 U.S., at 694.

9

Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. Id.; Pembaur, supra, at 480–481. These are "action[s] for which the municipality is actually responsible." Connick v. Thompson, ___ U.S. ___, 131 S. Ct. 1350, 1359 (2011) (quoting Pembaur, supra, at 479–48). A plaintiff must show a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 385 (1989).

The United States Court of Appeals for the Third Circuit has refined these definitions, explaining that policy or custom may be established: (1) "[w]hen a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action, issues an official proclamation, policy or edict," or (2) through a "course of conduct ... when, though not authorized by law, such practices of state officials [are] so permanent and well-settled as to virtually constitute law." Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir.1990) (citations and quotations omitted). These standards ensure that municipalities may incur liability only for deprivations resulting from the decisions of "those officials whose acts may fairly be said to be those of the municipality." Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403–04 (1997); see also Anderson v. Goga, C.A. No. 11 – 528, 2011 WL 4737569 (W.D. Pa. Oct. 5, 2011).

In the case at issue, review of the Complaint reveals that Plaintiff does not sufficiently allege any direct participation, whether by custom or express policy, by any municipal entity resulting in the violation or deprivation of his constitution rights.

As to the Supervisory Defendants, the Complaint alleges:

21. At all times pertinent to this Complaint, the Defendants herein were obligated to take reasonable measures to protect prisoners from violence at the hands of other prisoners incarcerated in the Butler County Prison, as being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.

22. The aforementioned conduct of the Defendants, in housing a non-violent county prisoner with state correctional inmates, forcing Austin to return to his cell despite reported prior violence, and failing to ensure adequate medical care subsequent to the beating, constituted deliberate indifference to the conditions posing a substantial risk of serious harm which shocks the conscience, and was part of a policy of deliberate indifference practices at the Butler County Prison.

24. The Defendants failed to take reasonable measures to protect prisoners from violence at the hands of other prisoners incarcerated in the Butler County Prison.

27. The failure of the Defendants, County of Butler, Butler County Prison, Prison Board of Butler County, and Richard Gigliotti, to properly train, supervise, instruct, monitor and discipline the Defendants in their employ, control and/or command constitutes deliberate indifference toward the care and safety of individuals incarcerated at the Butler County Prison.

28. The Defendants, County of Butler, Butler County Prison, Prison Board of Butler County, and Richard Gigliotti condoned the acts of the Defendants in their employ, control and/or command as described in this Complaint, failed to implement policies to curtail or remedy those acts; adopted an maintained a policy, practice and custom for such acts; and deliberately, knowingly and/or negligently failed to provide proper training, supervision and control of the Defendants in their employ, control and/or command.

The Complaint does not allege that any of the Supervisory Defendants participated in the decision to return Plaintiff to his cell nor does it allege that they had any knowledge of the initial assault.[2] Instead, Plaintiff alleges that after the initial assault: "[t]he Plaintiff immediately reported the attack to Officer McCandless. Said Officer insisted that Austin return to his cell wherein the two inmates were waiting. At this time, Austin was beaten for some forty-six (46)

---

[2] And, for the reasons discussed supra, Plaintiff does not state a claim against any Defendant arising out of his housing placement with convicted state inmates.

11

seconds, receiving substantial injuries about the head and neck." ECF No. 1, ¶ 15. Given these allegations, the Complaint fails to provide any factual basis for the assertion that the Supervisory Defendants, through some custom or policy, required McCandless to return Plaintiff to his cell without checking first to see if it was safe. Similarly, with regard to his medical treatment, Plaintiff alleges: "[a]fter the beating, Austin was seen by a BCP nurse, but was not transported to a hospital, despite said nurse asserting her belief that Austin may have sustained a skull fracture. Rather, Austin was given an ice pack, had two Motrin charged to his commissary account, and was returned to his cell in G-Pod, where he had [been] beaten. Austin was transferred the next day at his request." ECF No. 1, ¶ 16. Plaintiff does not assert that the nurse's treatment of Plaintiff's injuries was pursuant to a particular policy or custom, rather than her own individual judgment that no further treatment was needed.

In his Response to Defendants' Motion to Dismiss, Plaintiff contends that particularity is unnecessary, and argues that in any event his claim is sufficiently pled through his allegation that Defendant McCandless's conduct in forcing Plaintiff to return to his cell "was part of a policy of deliberate indifference practiced at the Butler County Prison." ECF No. 14, p. 11. Citing the decision of the United States District Court for the Eastern District in Banegas v. Hampton, C.A. No. 08-5348, 2009 WL 1098845 (E.D. Pa. April 22, 2009), Plaintiff argues that a "short and plain statement" of the claim is sufficient if it "provides fair notice to the defendant of the plaintiff's grounds upon which it rests." ECF No. 14, p. 10.

However, in considering a claim of a policy or procedure of deliberate indifference, the Plaintiff's Complaint "offers only bald assertions that policies or customs existed" requiring McCandless to act with deliberate indifference to inmate safety. The Complaint fails to offer

12

facts that would suggest that the assault occurred as the result of anything other than the "idiosyncratic actions of [an] individual public actor." Burke v. Twp. Of Cheltenham, 742 F. Supp.2d 660, 675 (E.D. Pa. 2010). Plaintiff's Complaint does not set forth facts sufficient to render his claim "plausible" against the Supervisory Defendants. As such, the Motion to Dismiss this claim against Richard Gigliotti, the County of Butler and the Prison Board of Butler County is granted.

### 2. Failure to Train or Supervise

Plaintiff also alleges that the Supervisory Defendants are liable under Section 1983 based on a failure to train or supervise Defendants McCandless and the unidentified nurse. In order to assert a claim of a failure to train or supervise, the United States Court of Appeals for the Third Circuit has held, "'[w]here ... the policy in question concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact.' Carter v. City of Philadelphia, 181 F.3d 339, 357 (3d Cir.1999) (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)).

> "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. The city's "policy of inaction" in light of notice that its program will cause constitutional violations "is the functional equivalent of a decision by the city itself to violate the Constitution." A less stringent standard of fault for a failure-to-train claim "would result in de facto respondeat superior liability on municipalities ...." [S]ee also Pembaur, supra, at 483, 106 S.Ct. 1292 (opinion of Brennan, J.) ("[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by [the relevant] officials ...").

13

> A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train. Policymakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.

Connick v. Thompson, 131 S. Ct. 1350, 1360 (2011)(internal citations omitted). At this stage of the litigation, the Complaint must allege, at a minimum, facts giving rise to an inference that specific inadequacies in existing training resulted in Plaintiff's injuries.

In Montgomery v. De Simone, 159 F.3d 120, 122 (3d Cir. 1998), the United States Court of Appeals for the Third Circuit held that the deliberate indifference standard was not met when the plaintiff brought a Section 1983 against a police department after one of its officers arrested her and charged her with speeding, driving while intoxicated, and refusing to take a breathalyzer. 159 F.3d at 122. In that case, the plaintiff alleged that, after pulling her over, the arresting officer's "demeanor changed," and he "asked her if she liked policemen or dated them." Id. at 123. Her subsequent Section 1983 failure to train claim was based on the contention that the arresting officer was "never trained not to sexually harass the female public and was not disciplined as a result of the incident involving [the plaintiff]." Id. at 127. The Court of Appeals affirmed the dismissal of the claims in favor of the police department, finding that the plaintiff pointed to no specific inadequacy in the police training program and failed to allege any action or inaction that could be construed as encouraging the officer's offensive actions. Id.

In the case at issue, Plaintiff's Complaint does not address the requisite elements to establish a claim. Plaintiff's Complaint does not identify any particular failing in existing

14

training relative to responding to inmate assaults or to providing medical treatment after an inmate assault.  Similarly, the Complaint does not suggest that the alleged failure to train has caused a pattern or similar constitutional violations, so that the Supervisory Defendants were aware of and indifferent to an unreasonable risk of injury, which could have been addressed by implementing a specific method of training.  Instead, the Complaint does nothing more than reference the alleged constitutional violations of Defendant McCandless and impute the violations to the Supervisory Defendants as the result of some unspecified failure to train.  As in Anderson v. Goga, C.A. No. 11-528, 2011 WL 4737569 (W.D. Pa. Oct. 5, 2011), "such conclusory and speculative accusations fail to state a claim of municipal liability" on the part of the County of Butler, the Prison Board of Butler County or Richard Gigliotti, in his capacity as Warden of the Butler County Prison. Because the factual content pled in Plaintiff's Complaint does not allow the Court to draw a reasonable inference that any of the municipal defendants, or any municipal program, were the source of his injury, the claims against them are dismissed without prejudice.  Santiago v. Warminster Tp., 629 F.3d 121, 135 (3d Cir. 2010)(for facial plausibility sufficient to satisfy Iqbal, a claimant must specify what exactly the custom or policy was and how the policy was the source of the alleged injury).

      Plaintiff has not sufficiently alleged a failure to train or supervise claim.  As such, the Motion to Dismiss as to this claim against the County of Butler and the Prison Board of Butler County is granted.  Additionally, because the Complaint does not allege any individual and personal participation by Defendant Gigliotti in the constitutional violations suffered by him, Plaintiff's claims against him in his individual capacity are also dismissed without prejudice.  Id.

### E. The Jane and John Doe Defendants.

Defendants seek the dismissal of claims arising out of the alleged constitutional violations committed by Defendants Jane and John Doe. Defendants correctly indicate that the Complaint does not allege the conduct of these unidentified defendants resulting in the violation of Plaintiff's constitutional rights. Plaintiff opposes the Motion to Dismiss Jane and John Doe, asserting that they are the unidentified nurse and doctor who exercised deliberate indifference with regard to Plaintiff's medical care after the second assault. Nowhere in Plaintiff's Complaint, however, is this connection between Defendants and the claims made. In this regard, Plaintiff's Complaint violates the spirit and letter of Rule 8 of the Federal Rules of Civil Procedure.

Although there is not a heightened pleading standard in civil rights cases, a civil rights complaint, in order to comply with Rule 8, must contain at least a modicum of factual specificity, identifying the particular conduct of the defendant that is alleged to have harmed the plaintiff, so that a court can determine that the complaint is not frivolous, and so that a defendant has adequate notice to frame an answer. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A civil rights complaint complies with this standard if it alleges the conduct violating the plaintiff's rights, the time and the place of that conduct, and the identity of the responsible officials. Also, a civil rights pleading must include factual allegations to support the constitutional claims raised in the complaint. See Ashcroft v. Iqbal, 556 U.S. 662 (2009).

In this case, the only clue provided as to the potential identity of Jane and John Doe, along with the conduct that is alleged to have harmed Plaintiff, is gleaned from Plaintiff's

16

Response to Defendants' Motion to Dismiss, ECF No. 14, p. 9.  Given the insufficiency of Plaintiff's Complaint, however, and in an effort to construe the pleadings so as to do justice, Fed.R.Civ.P. 8(e), Plaintiff is directed to file an Amended Complaint within 20 days detailing the exact nature of the claims against Jane and John Doe.

### F. Denial of Medical Treatment

Plaintiff's Complaint alleges an Eighth Amendment claim of deliberate indifference to serious medical needs arising out of inadequate medical treatment for injuries sustained in the assault. With respect to this claim, Plaintiff alleges that he was seen by a nurse in the immediate aftermath of the assault and that she opined that Plaintiff had sustained a skull fracture.  Plaintiff alleges that he was not transported to a hospital and that his immediate medical treatment consisted of an ice pack and two Motrin.  Plaintiff further alleges that he was not examined by a doctor for three days. Defendant seeks the dismissal of Plaintiff's claim regarding the alleged deliberate indifference to his medical condition on the basis that the facts alleged do not give rise to a claim upon which relief may be granted.  As with Plaintiff's failure to identify the claims against Jane and John Doe, the Complaint fails to identify the defendant(s) against whom these claims are alleged. Defendants Motion to Dismiss therefore is granted; however, Plaintiff is granted twenty (20) days within which to file an Amended Complaint as to this claim, identifying the defendants against whom the claims are alleged.

### G. Punitive Damages

Defendants contend that that Plaintiff improperly seeks punitive damages against the Defendants. Inasmuch as this Court has granted without prejudice Defendants' Motion to Dismiss as to Butler County, Prison Board of Butler County and Richard Gigliotti, there is no

17

need to consider the viability of Plaintiff's claim for punitive damages against these parties at this time. However, Plaintiff also seeks the imposition of punitive damages against Defendant McCandless and Defendants Jane and John Doe (presumably for the exercise of deliberate indifference in providing medical treatment).

Punitive damages may be awarded under 42 U.S.C. § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Alexander v. Riga, 208 F.3d 419, 431 (3d Cir. 2000)(quoting Smith v. Wade, 461 U.S. 30, 56 (1983)). Plaintiff's allegations that Defendant McCandless required him to return to his cell after the first assault and exposed him to the second attack permit an inference that he acted with at least the requisite level of indifference to Plaintiff's federally protected rights, and state a plausible claim for punitive damages at this stage of the litigation. Therefore, the Court will deny Defendants' motion to dismiss Plaintiff's punitive damages claim as to Defendant McCandless. With regard to Defendants Jane and John Doe, the Court defers consideration of the motion to dismiss Plaintiff's punitive damages claim pending the filing of the anticipated Amended Complaint as to these parties.

## IV.    CONCLUSION

For the foregoing reasons, the Motion to Dismiss [ECF No. 10 ] is granted in part and denied in part as follows:

> 1) The Motion to Dismiss Plaintiff's claims against Butler County Prison is granted;
>
> 2) The Motion to Dismiss Plaintiff's claims against Butler County, Prison Board of Butler County and Richard Gigliotti, individually and

in his capacity as Warden of the Butler County Prison, is granted without prejudice and these parties are dismissed from Plaintiff's action; however, if the course of discovery reveal facts some evidence upon which Plaintiff's theories of liability against these Defendants finds some support, Plaintiff may seek to amend his pleadings and properly assert such claims;

3) The Motion to Dismiss Plaintiff's claims arising out of his housing placement with convicted state custody inmates is granted;

4) The Motion to Dismiss Plaintiff's claims against Defendants Jane and John Doe is granted; however, Plaintiff is granted twenty (20) days to file an Amended Complaint as to these Defendants, specifically identifying the claims against these Defendants;

5) The Motion to Dismiss Plaintiff's claims against Defendant McCandless is denied;

6) The Motion to Dismiss Plaintiff's Eighth Amendment claims arising out of alleged deliberate indifference with regard to the inadequate medical treatment provided to Plaintiff after the assault is granted without prejudice; however, Plaintiff is granted twenty (20) days to file an Amended Complaint as to this claim, specifically identifying the Defendants against whom these claims are filed;

7) The Motion to Dismiss Plaintiff's claim for punitive damages against Defendants Butler County, Prison Board of Butler County, and

Richard Gigliotti, in his capacity as Warden and individually, is granted without prejudice; the Motion to Dismiss Plaintiff's claim for punitive damages against Defendant McCandless is denied.

An appropriate Order follows.

## **ORDER**

AND NOW, this 4th day of February, 2013, upon consideration of Defendants' Motion to Dismiss [ECF No. 10] and Plaintiff's response thereto, IT IS HEREBY ORDERED that the Motion to Dismiss is granted in part, without prejudice, and denied in part as more fully set forth in the accompanying Opinion.

IT IS FURTHER ORDERED that Plaintiff is granted twenty (20) days to file an Amended Complaint. No further amendments shall be permitted without appropriate motion and leave of court.

BY THE COURT,

/s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc: All counsel of record by Notice of Electronic Filing